WILLIAM E. THORN, APPELLANT AND RESPONDENT, *v.* HARRIET H. GARNER AND FRANCES M. ISELIN, RESPONDENTS AND APPELLANTS.

*Interest — when allowed on a legacy to a son of the testator, from the time of the latter's death — an executor will be compelled to pay compound interest only in cases of gross delinquency.*

Thomas Garner, Sr., died October 16, 1867, leaving two sons, Thomas and William T., and three daughters. By his will he gave to his "son Thomas the sum of one million dollars, to be paid him within eighteen months" after the testator's decease. His son William T. qualified and acted as his sole executor. Thomas, the son, came of age on October 9, 1859, was married on June 6, 1860, and died on March 23, 1869, leaving a widow and a daughter, who are defendants in this action. He left a will, by which he appointed his brother William T. and the plaintiff his executors; both of whom qualified. In 1871 William T., and the plaintiff, as such executors, applied to the surrogate for a final settlement of their accounts, the defendants, the widow and daughter, having notice thereof, but not appearing, except that a special guardian was appointed for the daughter. On April fourth a decree was entered, settling the executor's accounts, in which the legacy of $1,000,000 was credited as paid at the end of eighteen months from the death of the testator, without interest.

William T. Garner having died in 1876, the plaintiff brought this action for an accounting for his proceedings subsequent to the settlement in 1871, and to obtain leave to resign and have a successor appointed. A stipulation was made in this action allowing the question as to the right to receive interest upon the $1,000,000 from the death of the testator to be considered, notwithstanding the accounting of 1871.

*Held*, that as the evidence showed Thomas Garner, Jr., to have been in feeble health, wholly dependent upon his father for the means of support of himself, wife and child, and that his father had, from the time Thomas became of age, until the time of the father's death, regularly furnished him the money necessary for his support, it must be presumed that the testator intended that Thomas' legacy should draw interest from the time of his death.

That the plaintiff should be charged with simple interest only on the additional amount found to be due from him at the time of the former accounting, and not with compound interest.

APPEALS by the plaintiff, and by the defendants above named, from parts of a judgment entered on the report of a referee.

*H. A. Nelson,* for the plaintiff, appellant and respondent.

*Joseph H. Choate, Duncan Smith* and *J. Evarts Tracy.* for the defendants, respondents and appellants.

CHURCHILL, J. :

Thomas Garner, Sr., died October 16, 1867, leaving a large real and personal estate, considerably exceeding $5,000,000 in value. He left two sons, Thomas Garner, Jr., and William T. Garner, and three daughters. He left a will dated April 12, 1866, by which he made provision for each of his children. That for his son, Thomas Garner, Jr., was as follows :

" *Sixth.* I give and bequeath to my son Thomas, the sum of $1,000,000, to be paid him within eighteen months after my decease."

He made his son, William T. Garner, his residuary legatee, thereby giving him a share of the estate considerably exceeding that of any other child. He appointed his two sons, one of his sons-in-law, and the plaintiff in this action, executors. William T. Garner alone qualified and acted as executor of his father's will. The personal estate proved sufficient to pay all the legacies of the will and debts of the testator, and to leave a considerable sum for the residuary legatee.

Thomas Garner, Jr., came of age October 9, 1859; he was married June 6, 1860; his only child, Frances M. Iselin, one of the defendants, was born July 3, 1861, and he died March 23, 1869, leaving a widow, the defendant, Harriet H. Garner, and their child above named. He left a will dated November 12, 1867, appointing as executors and trustees of his estate his brother, William T. Garner, with the plaintiff, both of whom, soon after his death, qualified and entered upon their duties as such.

In the early part of 1871, William T. Garner, with the plaintiff, applied to the Surrogate of New York for a final settlement of their accounts as such executors, of which the defendants, Harriet H. Garner and her daughter, then an infant, had notice. No appearance for the widow or her daughter appears to have been made, except that a special guardian was appointed for the infant. April 4, 1871, a decree was made by the Surrogate, adjudging the balance in the hands of the executors to be $840,861.37, and directing them, after paying commissions and the expenses of the accounting, to hold and invest the same as directed by the will, which was done by them.

The account, as presented and allowed, credited the legacy of $1,000,000 under the will of Thomas Garner, Sr., as having been paid April 15, 1869, or at the end of eighteen months from the death of the testator, and included no interest upon the legacy for any part of that period. It included an item of $177,754.03, charged as cash paid by the executors to Garner & Co. for moneys advanced by Garner & Co. to Thomas Garner, Jr., during his life and before the legacy of $1,000,000 was paid.

Garner & Co. was composed of William T. Garner and a nominal partner, who received a salary for his services and had no interest in the property or profits of the firm, and the moneys advanced by Garner & Co. to Thomas Garner, Jr., were in fact paid by William T. Garner, who, as executor of his father's will at the time when such moneys were paid to Thomas Garner, Jr., and also at the time when said legacy was credited as paid, had in his hands ample funds from which to pay the interest upon said legacy, if Thomas Garner, Jr., was entitled to interest thereon from his father's death.

William T. Garner died July 20, 1876, and the plaintiff has ever since been sole executor and trustee under the will of Thomas

Garner, Jr. This action is brought by the plaintiff to obtain permission to resign those positions, and for the appointment of a new executor and trustee, for an accounting subsequent to that before the surrogate in 1871, and for his discharge from further responsibility or accountability for the estate of Thomas Garner, Jr.

A previous action by the defendants, Harriet H. Garner and her daughter, against the plaintiff was brought soon after the death of William T. Garner, asking, with other relief, for the removal of the plaintiff as trustee and the appointment of a new trustee, for an accounting, and particularly that he be required to pay and make good the said sum of $177,754.03, as having been improperly allowed upon the accounting before the surrogate.

That action was discontinued upon a stipulation providing that a proceeding should be commenced by the plaintiff to obtain the results sought in this action, and that upon the accounting to be had in that proceeding the decree made by the surrogate, above referred to, should be final, conclusive and binding upon the parties, except as to certain items, the adjustment of which was agreed upon in the stipulation, and also except as to " certain moneys, amounting in the aggregate to one hundred and seventy-seven thousand seven hundred and fifty-four dollars and three cents, which were paid by Garner & Co. on drafts of Thomas Garner, Jr., deceased, and for his account between the death of Thomas Garner, Sr., and the death of Thomas Garner, Jr., the question being not as to the fact that the money was paid to and for the account of Thomas Garner, Jr., but as to whether such payments are properly chargeable against the legacy left by the said Thomas Garner, Sr., to the said Thomas Garner, Jr." This action is not the proceeding contemplated when the stipulation was made, but is in the same direction, and the stipulation is conceded on both sides to be binding upon the parties to it in the accounting had in this action.

This action was referred, and the referee by his report has found that Thomas Garner, Jr., was entitled to interest upon his legacy from his father's death, and that the payments of cash in the item of $177,754.03 should be treated as made by William T. Garner on account of that interest, to the extent of it, and the excess only treated as a payment on the principal of the legacy, and he has readjusted the account to conform to those findings. By such

readjustment he finds the sum of $109,860.54 to have been on deposit with Garner & Co., in the hands or under the control of the executors of Thomas Garner, Jr., and uninvested on the 31st day of January, 1871, beyond the amount accounted for in the accounting before the surrogate, and he allows simple interest upon that amount from that date.

The plaintiff insists that interest was improperly allowed by the referee upon the legacy of $1,000,000, from the death of Thomas Garner, Sr., and also that certain sums paid to William K. Thorne as attorney for the executors of Thomas Garner, Jr., were allowed only in part.

The defendants, Harriet H. Garner and Frances M. Iselin, insist that compound and not simple interest should have been allowed upon the sum of $109,860.54, above mentioned.

These are the principal questions raised by the appeals, and the only ones necessary to be considered.

Ordinarily, a legacy is not payable until the time fixed by the will for its payment; or, if no time be fixed, until the period fixed by the statute has expired; and until payable it draws no interest.

To this general rule there are several exceptions, the most important of which is the case of a legacy left by a parent to a child, for whose maintenance no other provision is made, and who, unless interest be allowed, is without income intermediate the death of the testator and the legacy becoming due. In such case the legacy draws interest from the death of the testator. (*Green* v. *Belcher*, 1 Atk., 505; *Heath* v. *Perry*, 3 id., 101; *Hearle* v. *Greenbank*, 3 id., 695, 716; *King* v. *Talbot*, 40 N. Y., 76; *Brown* v. *Knapp*, 79 id., 136; Redfield's Surrogate Courts, 601.)

The rule is thus stated by Lord Hardwicke (1 Atk., 507, A. D. 1737): "It being a constant rule in equity, that whenever a legacy is given by a father to a child, as a provision for such a child, though the legacy be payable at a future day, yet the child has an immediate right to the interest of the money."

And again (3 Atk., 102): "How far a legatee, who is not entitled to the payment of his legacy immediately, shall have interest in the meantime, depends upon particular circumstances. * * * But all these cases are subject to this exception if it is in the case of a child; for then, let a testator, give it how he will, either at twenty-

one or at marriage, or payable at twenty-one, or payable at marriage, and the child has no other provision, the court will give interest by way of maintenance, for they will not presume the father inofficious or so unnatural as to leave a child destitute." And this was a rule coming down from a much earlier period. (*In re George*, 22 (Moak's) Eng. Rep., 507, 510.)

This rule is recognized and made to include one not a child, but to whom the testator stood in *loco parentisi*, in *Brown v. Knapp* (*supra*), where it is said (p. 142): "This rule is based upon the presumption that the testator, in such case, must have intended that the legatee should, in the meantime, be maintained at his expense, thus discharging his moral obligation, or carrying out his benevolent design. It is not needed for the application of this rule that the testator must have been under a legal obligation, *at the time of his death*, to support the legatee. Such obligation of a testator to support his own child continues only during his life. * * * The duty of a testator, in this case, to provide for and support this infant grandchild, was almost, if not quite, as strong as that of supporting his own children, and it must be presumed that he meant to discharge that duty. * * * This legacy, therefore, carried interest from the death of the testator."

It is said that the rule is limited to legacies to infants. Most of the cases in which the question has arisen have been those of legacies to infants, and the language used in stating the rule has frequently been limited accordingly. But the moral obligation of a parent to make provision for the support of a dependent child includes adult as well as infant children, and is certainly as great in the case of such adult child as in that of one not a child, but to whom the testator has assumed the place of a parent. This moral or natural obligation is frequently referred to as the foundation of this rule, and upon it rests the provisions of the Revised Statutes, which makes the parent liable for the support of an indigent child, whether adult or infant. (*In re Rouse's Estate*, 9 Hare, 649, 653; *Brinkerhoof* v. *Merselis*. 24 N. J. [Law], 680; 1 R. S., 614, § 1; 2 Kent's Com., 190.) A legacy given to an infant child by a will which makes other provision for its support, is held not to come within the rule, showing that the presumption of the intention of the testator upon which the rule rests, depends upon the fact that

the child is dependent and not otherwise provided for, and not upon the fact of infancy.

The case of *Bradner* v. *Faulkner* (12 N. Y., 472), is cited as settling this question favorably to the plaintiff. In that case, the testator gave to one of his two daughters (both adult and married) a farm valued at $15,060 and a legacy of $16,000; to the other, a farm valued at $31,060. The will declared it to be the intent of the testator to give his daughters equal advantages in the disposition of his property. The surrogate allowed interest upon the legacy from the father's death. This was affirmed at General Term, but reversed by the Court of Appeals. The latter court said that the predominant intention of the testator was to give equality of benefit to his daughters, and, considering the various provisions of the will in the light of that intent, held interest upon the legacy to have been improperly allowed. That the interest was necessary to the maintenance of the legatee was not claimed. Indeed, the contrary appeared, since she had a husband, presumably able to maintain her; and, also, the will gave her a valuable farm, to the possession of which she would be entitled immediately upon her father's death. The question involved here is not hinted at in the opinion of the court.

In this case the evidence showed Thomas Garner, Jr., to have been in feeble health; that he was wholly dependent upon his father for the means of support of himself, wife and child; that he had no other source of income; and that from the time he became of age until his father's death, his father had regularly each year furnished him the money necessary for his support. The amount so furnished in 1864 was $3,012.91; in 1865, $8,088.35; in 1866, $9,336.48; and in 1867 to October 16, the date of his father's death, $10,526.48. From the regular increase of these annual amounts the father must have understood, at the time of making his will and at the time of his death, that his son was dependent upon him, and that that dependence was not diminishing. The legacy was a provision for his son's maintenance. Unless interest be allowed, the son was without income intermediate the death of the testator and the payment of the legacy. The case furnishes the strongest ground for presuming the testator to have intended that his son's legacy should draw interest from his death, and the judgment in that respect should be

affirmed. It is claimed for the plaintiff that the surrogate's decree on the accounting of the executors of Thomas Garner, Jr,. made April 4, 1871, prevents the recovery by the defendants of interest on the legacy from the death of the testator. The stipulation made by the plaintiff with the defendants, in consideration of which they discontinued the action commenced by them in the Superior Court, furnishes an answer to this claim.

Had the question raised here been raised before the surrogate, and interest on the legacy of $1,000,000 been allowed by him from the death of the testator, the payments of cash included in the item of $177,754.03 would undoubtedly have been held first to apply in payment of that interest, and to that extent to have been extinguished, and the remainder only to apply in payment of the principal of the legacy, and the same result would have been arrived at as to the balance due at the time of that accounting as has been arrived at by the referee in this action. But the stipulation was obviously intended and understood by the parties as giving to the defendants the right to raise every question as to the allowance of that item or any part of it (except the fact of payment), which might have been raised on the hearing before the surrogate, and it was so treated on the trial of this case. Besides, the interest upon this legacy, if legally allowable, must, under the facts of this case, be regarded as assets in the hands or under the control of the executors of Thomas Garner, Jr., at the time of rendering their account in 1871, and not having been included in that account the decree is not conclusive against the claim now made by the defendants. (*Brown* v. *Brown,* 53 Barb., 217; *President, etc., Bank of Poughkeepsie* v. *Hasbrouck,* 6 N. Y., 216, 221; *Wurts* v. *Jenkins,* 11 Barb., 546.)

The plaintiff complains that part of the sums paid William K. Thorne for legal services, and charged to the estate of Thomas Garner, Jr., were disallowed by the referee. The charges were for services in keeping down taxation on the Garner estate. The whole amount of taxes on personal property paid for that estate, as well as these charges for legal services, were charged against the estate of Thomas Garner, Jr., and his sister Anna James Garner, who was also left a legacy of $1,000,000 by her father's will. Upon the trial of this action it was stipulated by the parties that but one-

fourth of the taxes so paid should be allowed against the estate of Thomas Garner, Jr., and the referee has adopted the same rule as to the sums paid for the legal services of William K. Thorne. This, upon the evidence, is quite as favorable to the plaintiff as he had a right to expect.

As to the claim of the defendants, Harriet H. Garner and Frances M. Iselin, that the plaintiff should have been charged with compound interest upon the sum of $109,860.54, with which the executors of Thomas Garner, Jr., were held to be chargeable, and which had remained uninvested from January, 1871, the referee was justified in rejecting it. Compound interest is allowed in cases of gross delinquency, or as a penalty for negligence or wrong-doing, or for some clear violation of a trust. For mere neglect to invest, simple interest is generally imposed. (*Clarkson* v. *DePeyster*, Hopk., 424, 427; *Hannahs* v. *Hannahs*, 68 N. Y., 610; *Utica Ins. Co.* v. *Lynch*, 11 Paige, 520; *Barney* v. *Saunders*, 16 How. [U. S. Rep.], 535, 542.)

In this case there is no evidence to show that the executors of Thomas Garner, Jr., supposed themselves chargeable with interest on this legacy until the question was raised in this action, or that they did not believe, in good faith, that they had invested for the benefit of their *cestuis que trust*, as directed by the surrogate, the whole trust fund, with the care of which they were charged. There is no uniform rule of redress in cases of this kind, but each calls for the exercise of the judicial discretion of the court, and in this case that judicial discretion was properly exercised.

The judgment should be, in all respects, affirmed, without costs of the appeal to either party.

Daniels and Barrett, JJ., concurred.

Judgment affirmed, without costs.